## WILLIAM G. TURNER v. EDWARD S. BIRD.

1. NEW TRIAL—NOT GRANTED FOR IMMATERIAL ERROR.—Where two trials were had, each resulting in a verdict for the plaintiff, and on the last trial the plaintiff's charges presented his theory of the case, and the defendant's charges his theory of the case, and the evidence, supported in some degree, either theory, nothwithstanding the instructions were vague, and one of them incomprehensible, this court will not reverse the verdict.

2. NEW TRIAL—A THIRD TRIAL IS DIFFICULT TO OBTAIN AFTER TWO ADVERSE VERDICTS. Two trials, each resulting in a verdict for plaintiff, are entitled to much weight in a case like this.

Error to the circuit court of Jackson county.   LEACHMAN, J.

The facts appear in the opinion of the court.

Assignment of errors:

1st. The court erred in overruling the motion for a new trial.

2d. The court erred in giving the 5th and 6th instructions asked for by the plaintiff below.

*George Wood*, for plaintiff in error:

The contract in this case was nothing but a mandate, and hence the plaintiff in error was responsible for gross negligence only.   2 Story on Contracts, 95, § 701, McKay v. Hamblin, 40 Miss., 472.   Particularly, Lampley v. Scott, 24 Miss., 528.   The fact that the plaintiff in error might use the money, does not vary the nature of the bailment.   That was not the thing to be done.   It was a mere permission, of which plaintiff in error might or might not avail himself.   It was not the consideration, or any part of the consideration, for his undertaking.   The whole case may be summed up in a few words. The plaintiff below requested the defendant to forward a draft to New Orleans, for collection.   It was not contemplated by either party, that defendant was to go himself, but was to forward by the steamer DeSoto.   That was the expectation of the plaintiff, for it was the usual course of defendant's doing business.   The defendant says that his promise was to forward by the captain or clerk of the boat.   Both mean the same; for, if forwarded by the boat, it must have been by one of the officers.   The defendant did forward by the clerk,

the first opportunity, and the clerk did not return three hundred dollars of the money after its collection. The defendant, instead of being guilty of neglect, took much more than ordinary pains to obtain it. It seems clear that the finding of the jury was not warranted by the evidence, and the court should have granted a new trial.

2d. The 5th instruction given for the plaintiff, is not easily comprehensible. It does not enunciate any principle of law, and if it had any effect, it was calculated to mislead. The 6th instruction given for plaintiff, on last trial, record, p. 10, is clearly erroneous. It amounts to this, that if defendant undertook to collect the draft, as a matter of accommodation, that he might use the money for awhile, and plaintiff thereupon indorsed the draft, the defendant was liable, it matters not whether the money was collected or not, or whether the defendant was guilty of gross or any neglect. The fact of his undertaking with permission to use, and of the indorsement, makes him liable in any event, if this be the rule of law.

It does not appear that there was a single pretence in law or in fact, for holding the defendant liable.

*Harris & Withers*, for defendant in error.

The question here is, whether Turner was the agent or bailee of bond in receiving and collecting the draft. We have the statements of both. As the jury found for Bird, we must take it for granted they took his statement to be true on all points in which a conflict occurs. The statement of Bird is very clear, that though he went to Turner to get him to collect the draft, that the conference ended in his agreeing to lend Turner the proceeds for a short time, to be used in his business, and that Turner accepted it with that understanding. Bird requested defendant to collect the money as a matter of accommodation, and told him at the same time, that he might use the draft in his business until the last of May, and that defendant replied, that he would need the money, or most of it, until that time; and the plain-

tiff thereupon indorsed the draft and delivered it to the defendant; that plaintiff did not call for the money until the 14th of May following the 4th of April, on which day he had delivered the draft to defendant. Nothing was said as to how the draft was to be sent or collected, though plaintiff supposed it would be sent by the DeSoto. This would be no bailment, but a loan, and the money when collected would be Turner's, on his agreeing to take it as a loan or to use in his business. The borrower of money is the owner of the money, not the bailee of the lender, and the loss of it must fall on him; but independent of this evidence, which was sufficient to authorize the jury to find that it was a loan, Turner's acts and omissions show clearly that he had elected to consider it a loan; and this relieves the case of the puzzle got up on the instructions. It does not appear that Turner, after he learned that the clerk had used the money, notified Bird of the fact. He received $100 00 of the money, and used it, paying to Bird part of the amount in goods; that he had sent the demand against McRae, on the boat, to his merchant in New Orleans to collect. He did not apprise the plaintiff of the state of the case, although he was chaffering with the agents of the boat, and the clerk, for the space of three weeks by his own account. If he considered that he was collecting the draft alone for Bird's accommodation, he could have notified him, or ought to have done so, as soon as it was collected, and certainly the moment the knowledge came to him that the clerk had spent it; but, instead of this, he suffered Bird to rest in security, without warning, until he finds he can't get the money from the boat, or the clerk, and then he informed Bird the money was lost, and that it was Bird's money, etc., etc. These circumstances, on the plainest rules of law and justice, turn the scale against Turner. He had signified his desire to use the money for a month or so, and Bird had assented to this. It was his duty to elect whether he would take as a loan or not, and he did make this election, because he permitted Bird to treat it as a loan. He cannot be permitted to treat it as a loan while he thought there was a chance to

get the money, and after he found that his agent had embezzled it, then to set up the character of a mere bailee. He can't ride on both sides of the sappling at the same time. There is no good ground to impeach the instructions taken as a whole. The first instruction for defendant gives him the full benefit of the principle on which he relied, and taken with the sixth instruction for plaintiff, which is assigned for error, presented to the jury the real issue, to-wit: if the defendant received the draft as a loan, he was liable, if he received it as a bailee, he was not.

The fifth instruction is simply nonsense, leading to no conclusion one way or the other. It may have puzzled the jury, but could not mislead them.

The evidence of Bird, taken with the admissions of Turner, as to his conduct after the money was collected in New Orleans, warranted the verdict.

TARBELL, J.:

In 1867, Edward G. Bird sued William G. Turner in *assumpsit*, in the circuit court of Jackson county, to recover the sum of three hundred dollars and interest. The defendant pleaded the general issue, and the issue was tried in January, 1869, before the circuit judge and a jury, resulting in a verdict and judgment for plaintiff. A new trial was granted by the court, on application of the defendant, and the cause was again tried at the October term, 1869—again resulting in favor of plaintiff. The cause comes here upon a bill of exceptions.

Upon the trial, the case presented was substantially as follows: The plaintiff, in his own behalf, testified that, having a sight draft on Sanford & Black, of New Orleans, payable to the order of plaintiff, for four hundred dollars, asked defendant to collect the same, which the latter undertook to do; plaintiff told defendant he might use the money for a short time; this was about the first of April, 1867; plaintiff indorsed the draft, and did not see defendant for several weeks after that, when defendant told plaintiff he had sent the draft by McRae, clerk of the steamer DeSoto. Defendant said the

clerk had told him (defendant) he had got the money, but that he (defendant) could not get it from the clerk, the latter alleging he had used it for the DeSoto. The clerk had paid defendant one hundred dollars, which he had paid to plaintiff, partly in goods and partly in cash. Defendant has never paid to plaintiff the balance due on the draft.

On cross-examination, plaintiff stated that this was an accommodation to him, and without recompense, only that defendant might use the money, in his own business, till some time in May; he did not expect defendant would collect the draft himself, but that he would forward it for collection by the steamer DeSoto, for that was his usual course of business. Plaintiff went to defendant and told him he had a sight draft, payable to his own order, drawn by W. P. Leslie, and requested defendant to collect the money as a matter of accommodation, telling him, at the same time, that he might use the draft in his business until the last of May. Defendant replied that he would need money, and might want to use it, or the most of it, until that time. Plaintiff, thereupon, indorsed the draft in blank, and handed it to defendant. This was the fourth day of April, 1867. Plaintiff did not again call on the defendant for the money until the fourteenth day of May then next. Nothing was said how the money was to be collected, or through whom it was to be sent; and plaintiff did not know that it was to be sent by the DeSoto, but expected it would be forwarded in that way. Both parties agreed to select or obtain the opinion of R. Seal, as to who was liable. R. Seal gave it as his opinion that Bird would have to look to Turner, as he had transferred to him the draft; Turner would have to look either to McRae or the owners of the steamer DeSoto; that Bird could not sustain an action either against McRae or the boat; and upon this advice, Bird, plaintiff, sued defendant.

The defendant, Turner, testified that plaintiff requested him to collect the draft, which he agreed to do. He told plaintiff he should forward the draft for collection by the captain or clerk of the steamer DeSoto, for he did not often

visit the city of New Orleans, and his usual way of collecting drafts of his own was in that way; plaintiff made no objection to this course. He gave the draft to the clerk of the DeSoto. On the return of the boat he was busy for a while, and about the time the boat was leaving he went down to see the clerk. The boat had just shoved off from the wharf. The clerk called to him and said he had collected the money on the Bird draft. He went down to Denny & Co.'s, the owners of the DeSoto, to get the money. The boat usually left in the evening. When he got there the boat had left. On her return and on several successive returns, he went to the boat to get the money. For several times he did not meet the boat; when he did, the clerk paid him $100 and it was the only money he could ever get from him, the clerk averring he had used the money on account of the boat, He repeatedly called on Denny & Co. to settle the amount. which they refused to do, alleging it had not been used for the boat. He had sent the claim to his merchants in New Orleans, and they had tried to collect it and failed to do so. He received the draft from plaintiff to be forwarded for collection in the manner it was forwarded, and the plaintiff understood it would be forwarded in that manner. Defendant did this as a matter of pure accommodation to the plaintiff, and without any compensation or benefit. Plaintiff had told him he might use the money if collected, and he replied that he might be glad to use a part of it. At this time the solvency of the payee was doubtful, and it was not known whether the draft would be honored. The plaintiff was anxious to have it presented as soon as possible, but did not wish to go to the city himself, and therefore got the defendant to forward it. · Defendant did forward it the first opportunity, in the manner contemplated by the parties. Up to that time the clerk, Mr. McRae, had always been considered reliable. He had often had him to transact business of that nature. He had much occasion to collect drafts and orders in the city, but seldom went himself, and generally forwarded them by the captain or clerk of the DeSoto for collection, and

they had always been punctual until this time. Both the captain and clerk were under age.

L. Rand, for defendant, testified that McRae, up to this time, had been safe and reliable, and that the solvency of Leslie was doubtful.

W. Denney, one of the owners of the boat, testified that he did not believe the money was used for the boat; up to this time McRae had been reliable.

This was in substance all the evidence. A motion for a new trial was overruled. The defendant having brought the case to this court, assigns the following, as causes of error, to-wit: "1st. The court erred in overruling the motion for a new trial. 2d. The court erred in giving the fifth and sixth instructions asked for by the plaintiff below."

The fifth and sixth instructions given for the plaintiff below, assigned for error, are as follows:

5th. "If the jury believe the indorsement and transfer of the draft by plaintiff to the defendant was a *bona fide* one, then that was a special contract, and is not governed by custom." 6th. "The jury are the sole judges of the weight of evidence, and if they believe from the evidence before them, that plaintiff had a draft for four hundred dollars payable to his own order drawn on Sanford & Black, in the city of New Orleans, and that plaintiff requested defendant to collect it for him as a matter of accommodation and at the same time told him he might use it in his business until the last of May, and that defendant replied, that logs were coming down and he might want to use it or the most of it until that time, and plaintiff then or about that time, with this understanding, indorsed the same to defendant then they will find for plaintiff."

The fifth instruction might have been incomprehensible to the jury and possibly have excited their curiosity as to its true meaning—but it could not have mislead them or have had any bearing upon their verdict.

The instructions were numerous and none of them remarkable for clearness. The plain questions for the consideration of the jury, however, clearly discernable through the mass

of instructions on both sides were these: 1st. Was this a loan from the plaintiff to the defendant and so accepted by the latter? 2d. Was the defendant a mere bailee, without compensation, for the collection of the draft? As these questions should be answered, so the jury would find.

The instructions for the defendant presented his views of the case in a variety of phases. The first of the series, will, as well as any or all, illustrate the theory of the defense, as follows: "1st. If the jury believe from the evidence that defendant received the draft to collect for plaintiff gratuitously and that he acted in good faith, and was not guilty of gross neglect, they should find for defendant."

This instruction, in connection with the sixth for the plaintiff above quoted, exhibited to the jury the conflicting views of this case, which they were called upon to solve. The testimony of the respective parties was essentially the same upon the main transaction. In considering the question, whether or not there was a loan to, and accepted by defendant, the jury had a right to, and doubtless did consider the conduct of defendant, as detailed by himself, subsequent to accepting the draft for collection. Although he was notified by the clerk, on the return trip of the boat, of the collection of the money on the draft, yet defendant withheld the information from plaintiff. One hundred dollars recovered of the clerk by defendant, he paid to plaintiff partly in goods. For several weeks defendant was struggling to recover the balance of the clerk or boat, yet neglected to apprise plaintiff of the facts. The plaintiff had considered and treated this as a loan, until some time in May, and until that time, had not called on defendant for the money. The defendant had expressed a desire to use a part, or the whole of the draft in his business, and the two had evidently parted with this understanding. The jury probably inferred as they had a right to do, that the defendant so understood the arrangement at the time, and that this understanding was confirmed by his subsequent conduct. He could not, then, in justice, after the rights of the respective parties were thus fixed and

.acted upon, be allowed to shift the responsibility by electing, without the assent of plaintiff, to treat the arrangement between them as that of bailor and bailee, without compensation. Two trials, both terminating in a verdict for plaintiff, are entitled to much weight in a case like this. We are of the opinion that substantial justice has been done, and discover no cause to send this issue back for another hearing.

The judgment of the court below is affirmed.